LAWRENCE JO JO SCOTT *v.* STATE OF ARKANSAS

5667                                                475 S.W. 2d 699

Opinion delivered February 7, 1972

*Louis W. Rosteck,* for appellant.

*Ray Thornton,* Attorney General; *James A. Neal,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. In the court below, charges of rape and assault with intent to kill were tried together by the circuit judge, without a jury. The appellant was found guilty of both offenses and was sentenced to life imprisonment upon the charge of rape and to twenty-one years imprisonment upon the second charge.

The appellant first questions the sufficiency of the evidence to support either conviction. Before narrating the proof we should explain that the State was handicapped in presenting its case by its inability to produce an eyewitness to either crime. The victim of the asserted rape was a two-year-old child, too young to testify. The victim of the assault was the child's father, Tal Daniell, but he was killed in an automobile accident before the case was tried.

On the afternoon of August 16, 1970, witnesses saw Scott (the defendant), Daniell, and the child leave Sims' Cafe, near Little Rock, in a truck. The three were seen a short time later at the nearby home of Scott's aunt, Dora West, who testified that Scott made an effort to sell a tire to Daniell, but the tire offered was not the right kind. Mrs. West also testified that a .25-caliber pistol owned by Scott was still in a drawer in her house when the officers came to investigate later that day.

The sequence of events is not completely clear, but apparently Scott was next seen in the neighborhood at the home of Mrs. West's daughter, Essie Duff. Mrs. Duff testified that while she was sitting in her yard Scott went in her house, came out again, and left. Mrs. Duff's sister had put a .38-caliber pistol in a drawer in Mrs. Duff's house, but Mrs. Duff testified that Scott did not

know the weapon was there, nor did she see that Scott was carrying anything when he left.

Back at Sims' Cafe, about thirty minutes after Scott and the other two left in the truck, bystanders at the cafe heard a shot down in the woods. Daniell and his daughter then drove up in the truck. Daniell was calling for help, saying that he had been shot (though the proof does not show what part of his body was hit). The child was standing up in the truck with blood running down both her legs. Later that afternoon Mrs. West talked to Scott by telephone and, with his consent, picked him up and turned him over to the deputy sheriffs, who were looking for him. Scott's sister testified that when she visited him at the jail that night Scott said that he had not touched the little girl. He also said that while he and "the man" were tussling, "the gun went off," which so scared Scott that he left the truck and ran away.

That same night the officers obtained the .38-caliber pistol that Essie Duff's sister, Elsie Harris, had left at Mrs. Duff's house. The pistol was in the drawer where it was kept, fully loaded except that one shot had been fired. Mrs. Harris testified that she had not fired the pistol. An officer testified that the weapon smelled as if it had been recently fired. The officers found a .38-caliber bullet lodged in the cab of the truck, but it was too extensively damaged to be identified as having come from any particular gun.

We find the proof insufficient to support a conviction for assault with intent to kill. The evidence to sustain such a charge must show a specific intent to kill. *Francis* v. *State,* 189 Ark. 288, 71 S. W. 2d 469 (1934); *Davis* v. *State,* 115 Ark. 566, 173 S. W. 829 (1914). In the case at bar the State's proof is fatally deficient in that respect. Since we are remanding the case for a new trial, for other errors, we shall not speculate upon what lesser included offense might be sustained by the proof.

On the other hand, we find the evidence sufficient to sustain a conviction for rape. The child's vaginal

area was so severely lacerated that Dr. Porter had to examine her by means of a general anesthetic. The laceration had bled profusely. Dr. Porter stated that the entrance to the vagina suggested that the laceration was not large enough to have admitted a penis, but an attempt at entry might have been made, causing the injuries. The injuries might also have been caused by any other object, including a finger, or by a fall. There was testimony by the officers that when Scott's undershorts were removed that night they were stained with what appeared to be freshly dried blood. It is immaterial that the clothing in question had been misplaced by the officers and could not be introduced in evidence, for a witness may describe a tangible object even though it is not physically present in the courtroom. *Washington* v. *State,* 248 Ark. 318, 451 S. W. 2d 449 (1970). Upon a charge of rape, proof of the slightest penetration is sufficient. *Cabe* v. *State,* 182 Ark. 49, 30 S. W. 2d 855 (1930). Here we find the proof adequate to sustain the conviction.

The judgments, however, must be reversed for another reason. At the time of his arrest Scott was duly warned of his constitutional rights and refused to make any statement. About three months later a deputy sheriff who was passing the cell where Scott was confined asked him, in the course of what appears to have been a bantering conversation, if he had raped the little girl. Scott replied, "Yeah." The trial court allowed proof of that question and answer and evidently attached some weight to it.

The evidence should have been excluded. In *Miranda* v. *Arizona,* 384 U. S. 436 (1966), the court stressed the fact that any waiver of the accused's constitutional right to remain silent and to have the assistance of counsel must be made "voluntarily, knowingly, and intelligently." In that connection the court went on to say:

"The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause

to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.

A confession made by a person in custody is presumed to have been involuntary. *Harris v. State,* 244 Ark. 314, 425 S. W. 2d 293 (1968). We certainly cannot say that the warning given to Scott some three months earlier had the effect of demonstrating that his admission to the officer was made voluntarily, knowingly, and intelligently, with a conscious awareness that it might be used against him. Hence, under *Miranda,* that proof should have been excluded.

Finally, when the defense rested its case without Scott's having testified, the trial judge stated that he was going to find Scott guilty and "give him life on the rape and twenty-one years on the assault to kill and let them run concurrently." The court then, over the objection of counsel, encouraged Scott to take the witness stand and give his explanation of the matter. After some further colloquy between court and counsel, Scott took the stand and gave a rather implausible exculpatory version of what had happened. Since we are reversing the judgment for another reason, we need not say whether the court's action would by itself have required a reversal of the conviction now under review. It is manifest, however, that Scott's testimony can be said to have been voluntarily given only in the sense that he hoped to make a favorable impression upon the very judge who had already announced his finding of guilty and his intended sentence. Consequently Scott's testimony cannot be considered for other purposes and therefore cannot be used by the State upon a retrial of the case.

Reversed and remanded for a new trial.