Edward Leon TEAS *v.* STATE of Arkansas

CR 79-29                                    587 S.W. 2d 28

Opinion delivered October 1, 1979
(In Banc)

*Duncan & Davis,* by: *A. Wayne Davis,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Edward Leon Teas was charged by two felony informations filed on February 16, 1978, with the sale of two pills of morphine on December 14, 1977, and the sale of marijuana for $20 on December 5, 1977. Over objections of appellant the trial court joined the two informations for trial. The jury assessed the maximum sentence and fine on both charges and the trial court ordered the sentences run consecutively. For reversal appellant raises the issues hereinafter discussed.

POINT I. With respect to severance of offenses, Criminal Procedure Rule 22.2 provides

"(a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the, defendant shall have a right to a severance of the offenses."

The proof on the part of the State shows only that sometime in 1973, Steve Hicks had sold drugs for appellant. After Hicks was arrested in November 1977, on a drug charge, he became a confidential informer for the State. In that capacity he went to the home of appellant on December 5, 1977 and asked for heroin. Appellant had no heroin but offered to sell Hicks some marijuana which Hicks bought. In connection with Hicks' capacity as a confidential informer he tried five or six times to again contact appellant but was unable to do so. On December 14, Hicks went by appellant's home and upon being informed that appellant was visiting one Steve Hall, Hicks went to Hall's residence where he again asked to purchase some heroin. Appellant stated that he did not have any heroin but had some morphine. He sold Hicks the two morphine pills for $60.00.

The only connection we can find between the two sales is the fact that both were made to Steve Hicks. This showing alone is insufficient to connect the two sales by a single scheme or plan within the meaning of Criminal Rule 22.2 *supra.* It follows that the trial court erred in joining the

two offenses for purpose of trial.

POINT II. Over objections of appellant the trial court permitted the State to put in proof of previous sales by appellant. To sustain the action of the trial court the State suggests that the evidence was ádmissible to show a single scheme or plan and that appellant by cross-examining the witness with reference to the other alleged sales is estopped to allege error. We find no merit to either contention. See *Moser v. State,* 266 Ark. 200, 583 S.W. 2d 15 (1979).

POINT III. The trial court after listening to the testimony of Billy L. Satterfield, Ollie Wilborg, Edward Teas, Jerry Roberts and Harold Helton overruled appellant's motion to suppress the confessions. After a review of the record we find that the trial court's finding of voluntariness is contrary to a totality of the evidence.

Billy Satterfield was called about 11:00 p.m. the day appellant was arrested. He was advised by Jerry Roberts and Ollie Wilborg that appellant had not made any statements at that time. The next day Satterfield had a conversation with appellant in the presence of Officer Wilborg. He states that it was his understanding that appellant could be of value to.the officers as an informer and that there was a mutual understanding reached that if appellant assisted the police, the police would in turn cooperate with appellant in the matter of reducing appellant's bond and making recommendations to the prosecutor and to the court for leniency and possibly even dismissal of the cases.

Officer Wilborg admits that appellant's helping the officers was discussed but that he told appellant and his lawyer, Billy Satterfield that anything appellant did would be told to the prosecuting attorney. However, he says he did not make any promises to appellant. Wilborg also told appellant and Satterfield that the Judge sets the bond, but that he would talk to Jerry Roberts about appellant helping the officers.

Officer Helton also testified that before appellant made any statements he stated he wanted to talk to his lawyer before he answered any questions.

Appellant Teas denies that he made any statements until after the discussion with Wilborg when Satterfield told him to tell it like it was.

For a confession to be free and voluntary, it must be given without hope of reward or fear of punishment. *Payne* v. *State of Arkansas*, 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed 2d 975 (1958). Here we cannot say that the confession was not obtained without hope of reward. It follows that the trial court erred in not suppressing the confession:

POINT IV. We find no merit to appellant's contention that the imposition of the maximum punishment and fine permitted by statute constitutes cruel and unusual punishment, *Dyas* v. *State*, 269 Ark. 303, 539 S.W.2d 251 (1976).

Reversed and remanded for proceedings not inconsistent herewith.

HARRIS, C. J., FOGLEMAN and HICKMAN, JJ., concur in part and dissent in part.

GEORGE ROSE SMITH, Justice, concurring. Criminal Procedure Rule 22.2 gives the defendant an absolute right to a severance when two or more offenses have been joined for trial solely on the ground that they are of similar character, but they are not part of a single scheme. Here the two offenses, sales of drugs, are unquestionably similar; so the controlling question is whether they were committed as part of "a single scheme or plan."

I think it plain that they were not so committed. The purpose of Rule 22.2 is to give effect to the principle that the State cannot bolster its case against the accused by proving that he has committed other similar offenses in the past. *Alford* v. *State*, 223 Ark. 330, 266 S.W. 2d 804 (1954). There are exceptions to that principle, however, as when two or more crimes are part of the same transaction, *Harris* v. *State*, 239 Ark. 771, 394 S.W. 2d 135 (1965), cert. denied 386 U.S. 964 (1967), or when two or more offenses have been planned in advance, as part of a single scheme. *Ford* v. *State*, 34 Ark.

649 (1879). The intent of Rule 22.2 must have been to carry into effect the spirit of those exceptions, by permitting the charges to be tried together when they are parts of a single scheme.

In drug cases the State cannot ordinarily prove that the accused sold drugs on one occasion by proving that he sold them on other occasions. *Rios v. State,*, 262 Ark. 407, 557 S.W. 2d 198 (1977); *Sweatt v. State,* 251 Ark. 650, 473 S.W. 2d 913 (1971). Such proof of other sales, as we pointed out in *Sweatt,* would merely show that the accused had dealt in drugs before and hence was likely to do so again.

Here the two sales were nine days apart. There is no showing (as there was in *Ford v. State, supra*) that Teas planned in advance to sell drugs to Hicks on December 5 and again on December 14. There simply was no such scheme. I strongly disagree with the dissenting view that a scheme can be shown by proof that the accused was engaged in the business of selling drugs. Such a holding would simply abolish the *Alford* principle in drug cases, because the prosecution could always join charges of two or more drug offenses and ask that they be tried together, as part of a single scheme or plan. No such intention can be read into Rule 22.2.

JOHN A. FOGLEMAN, Justice, concurring in part; dissenting in part. I agree with the majority that testimony relating to other sales of controlled substances by appellant was not admissible on the question of guilt or innocence, even though it was on the question of severance; however, I respectfully dissent as to points I and III. I cannot agree that there is reversible error in the trial court's action in consolidating the separate charges for trial. The trial court obviously acted under Rule 23.1 (a), Arkansas Rules of Criminal Procedure. Under that rule, the court may order consolidation of two or more charges for trial if the offenses could have been joined in a single indictment or information without prejudice to a defendant's right to move for severance under preceding sections. Charges may be joined in a single indictment or information when the offenses are of the same or similar character, even if they are not part of a single scheme or plan, or when they are based on the same conduct or on a single scheme or plan, or when they are based on the same conduct or on a

series of acts connected together or constituting parts of a single scheme or plan. Rule 21.1, Arkansas Rules of Criminal Procedure. If they are joined solely on the ground that they are of the same or similar character but are not part of a single scheme or plan, the defendant has an absolute right to a severance, Rule 22.2 (a), Arkansas Rules of Criminal Procedure.

The two offenses were of the same or similar character, i.e., sales of controlled substances. In my opinion, they were clearly a series of acts connected together or constituting parts of a single scheme or plan. The scheme or plan was to conduct a business of sale of controlled substances and to furnish them to Steve Hicks for a money consideration.

It was charged that the two sales were made within a period of nine days. Steve Hicks testified that he originally met Teas in 1973 on a night when he first purchased narcotics from Teas. Hicks said that Teas had supplied him with drugs off and on since that time and that he had purchased marijuana, morphine and heroin dulotta (a synthtic morphine) from Teas. On cross-examination, it was brought out that Hicks was guilty of four charges pertaining to drugs in 1974 and was sentenced to six months in jail and fined $500. Hicks said that Teas was then supplying him with drugs and that he made a living off drugs he sold for Teas, as far back as 1973 and 1974. Hicks testified about becoming a confidential informant after having been arrested in Sherwood in November, 1977, and about going to the residence of Teas in an effort to buy heroin. On the first occasion, December 5, 1978, he said Teas had no heroin, but sold him marijuana. On December 14, 1978, he again went to Teas's residence, and when Debbie Shaw told him that Teas was at Steve Hall's house, he went there and asked Teas for heroin. When Teas said he had some morphine, be bought two pills of morphine, instead.

In view of the history of dealing between the parties related by Hicks, the connection between the two sales was not dependent entirely upon the fact that both were made to Steve Hicks.

Other courts have dealt with similar matters. In *People* v. *Kaplan*, 86 N.Y.S. 2d 916 (1949), the defendant was charged

with three counts of accepting bribes, on three different dates ranging over a period of 30 days. The bribes were allegedly received from three different persons. The defendant moved for severance and separate trials on the ground that the charges involved two or more acts or transactions which constituted crimes of the same or similar character which were not connected together and were not part of a common scheme or plan. In disposing of the motion, the court said:

> It is obvious that the alleged acts, if true, constituted three crimes of the same or similar nature. However, it also appears that there is strong reason to suspect that the acts complained of, if true, constituted a part of a common scheme or plan on the part of the defendant to systematically shake down business men guilty of Labor Law violations within the area covered by him. Although different persons were involved in each instance, nevertheless, the three acts alleged occurred within a period of thirty days, within close proximity to each other in the same township, and the general pattern was the same.

> Therefore, it seems to me that in the light of the situation as it here exists, the Court is absolutely barred from exercising any discretion whatsoever.

In *Stephens* v. *State*, 144 Ga. App. 779, 242 S.E. 2d 371 (1978), the defendant was charged with two robberies which took place 11 days apart and involved bailees of the same business establishment as the victim. The robberies occurred while these bailees were transporting money for the bailor and evidenced a common scheme or plan. It was held that severance was within the sound discretion of the trial judge, and that the appellate court should not substitute its discretion for that of the trial court where abuse of that discretion was not shown.

In cases where a party is charged with a number of similar offenses growing out of the same relationship of the parties and their dealings with each other, to have separate trials would unnecessarily occupy the time of the court and add enormously to the costs of the case. *Williams* v. *State*, 214

Md. 143, 132 A. 2d 605 (1957).

Our rules on joinder are similar to Rule 8 of the Federal Rules of Criminal Procedure. The pertinent portion of that rule reads:

> (a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Charging a defendant with 11 separate offenses of making unlawful sales of narcotic drugs has been held to have been authorized by Rule 8(a) and in accordance with long established and conventional federal procedure, *Brandenburg* v. *Steele*, 177 F. 2d 279 (8 Cir., 1949). The joinder of charges against one defendant of selling heroin in June, 1968, and selling cocaine in August, 1968, for trial has been held not to be an abuse of discretion. *United States* v. *Tillman*, 470 F. 2d 142 (3 Cir., 1972).

The federal courts have found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials under the federal rules on joinder and severance. *Drew* v. *U.S.*, 331 F. 2d 85 (D.C. Cir., 1964). The position of the federal courts was summarized in the opinion in that case, where the separate counts were robbery and attempted robbery. That court said:

> In summary, then, even where the evidence would not have been admissible in separate trials, if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the

commencement of the trial. If, however, it appears at any later stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, then, upon proper motion, the trial judge should order severance.

In *United States* v. *Adams*, 434 F. 2d 756 (2 Cir., 1970), it was held that charges of sale of heroin hydrochloride on April 3, 1967 and possession of heroin hydrochloride on January 16, 1968, when accused was arrested, were properly joined as two transactions constituting part of a common scheme or design of "trafficking in narcotics."

In my opinion, these offenses were part of a common scheme or plan.

I do not see how the majority can say that the holding that the written confession by Teas was voluntary was "contrary to a totality of the evidence." Our standard on appellate review is that we will not reverse a finding of the trial court on the question of voluntariness of a confession, unless it is clearly against the preponderance of the evidence. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515. I would not feel that the majority was establishing a new standard by the mere use of new words, were it not for the application made of them. The majority seems to have resolved conflicts in the testimony against the finding of the trial court and concludes the matter by saying that "we cannot say that the confession was not obtained with hope of reward." This is hardly a basis for saying that the holding of the trial court was clearly against the preponderance of the evidence. What the majority had said is not, and cannot be, an independent determination based upon the totality of the circumstances, giving due deference to the finding of the trial court. See *Harris* v. *State*, 244 Ark. 314, 425 S.W. 2d 293.

Sheriff Wilborg testified that he met with Satterfield and Teas in the jail between 4:00 and 5:00 p.m. on May 2, before Teas signed any statement. According to him, Satterfield had previously told him that he had talked to Teas and told Teas "to tell it like it was." Wilborg said that Satterfield stated

that Teas knew a lot of people and could probably help "get some people." Wilborg testified that he then went and got Teas out of a cell and brought him to the top of the stairs, where the three discussed Teas's helping the officers with some drug cases. Wilborg stated that he told Teas that anything Teas did "would be told to the prosecuting attorney" and that he told Satterfield that the judge sets the bond but that he would talk to Jerry Roberts about Teas's helping them, and if Roberts wanted his help on some cases, he would try to get the bond reduced. Wilborg flatly denied that he offered to help Teas if he made a statement, or that he told Teas that he would grant leniency. Wilborg said that the only thing he told Teas was that, if Teas would give some assistance in setting up drug "buys," that information would be passed on to the prosecuting attorney for whatever benefit it would be to Teas.

The question of credibility was resolved by the trial judge in favor of Wilborg. In such cases we must defer to the superior position of the trial judge to pass upon credibility of the witnesses. *State* v. *Osborn*, 263 Ark. 554, 566 S.W. 2d 139; *Whitmore* v. *State*, 263 Ark. 419, 565 S.W. 2d 133. The hope of reward that renders a confession involuntary is not one that arises in the mind of the accused. It must be induced by the words and actions of the interrogating officers and must be directed to the giving of a confession.

According to Wilborg's testimony, if there was any "deal," it was instigated by Satterfield, who advanced the proposal to Wilborg, after saying that he had told Teas to "tell it like it is," and that "deal" was to inform the prosecuting attorney of any assistance Teas rendered. Nobody says that he rendered any.

In *Hargett* v. *State*, 235 Ark. 189, 357 S.W. 2d 533, we held that where an officer to whom a confession was made testified that he told the accused, who was in the officer's custody, that he would help the accused all he could but denied that this offer was conditioned on the accused's admitting the crime with which he was charged, the question of voluntariness of the confession was one of fact. In *Crosnoe* v. *State*, 190 Ark. 691, 80 S.W. 2d 625, we held that the in-

surance commissioner and fire marshal's statement to a defendant accused of arson that he had conferred with the prosecuting attorney and that the prosecuting attorney had said he would be inclined to follow whatever the official and the victim thought best in the matter, prior to a confession by appellant to the sheriff, was not a promise of immunity and did not render the confession involuntary when the sheriff testified that the statement was voluntary and the accused did not testify that he had been promised a hope of reward.

Before a confession is tainted by "flattery of hope," that hope must be based upon the promise of a reward or advantage and the confession must be officially induced. *Greenwood v. State*, 107 Ark. 568, 156 S.W. 427. A confession made under the influence of hope of mitigation of punishment excited by those in authority is inadmissible as a voluntary confession *Freeman v. State*, 258 Ark. 617, 527 S.W. 2d 909. In *Freeman* (cited by appellant), the major circumstance considered was that the deputy prosecuting attorney, when asked by the accused what would happen to him when he gave a statement, answered that if accused had committed a crime, it was probably one that would not result in more than 21 years' imprisonment. The accused then gave a statement immediately after the deputy prosecuting attorney left. After the accused gave his statement, he was charged with robbery, which would have carried a maximum punishment of 21 years' imprisonment. Later, after the accused had talked with the public defender, he became less cooperative with the authorities and a first degree murder charge was filed. We concluded that the accused, who had declined to make any statement prior to his conversation with the deputy prosecuting attorney, was justified in feeling that there had been an implied promise of leniency for his making a statement. The circumstances here are different.

In *Penton v. State*, 194 Ark. 503, 109 S.W. 2d 131, we held that a confession was not inadmissible because a deputy sheriff had told the accused that it would go well with the accused if he told the truth, when it was not coupled with innuendo or subtleties calculated to deceive the prisoner.

Unless this court resolves all questions of credibility

against Sheriff Wilborg, it cannot reject his version of what happened, and cannot say that the trial court's finding on the question of voluntariness was clearly against the preponderance of the evidence. I would affirm the trial court on this point.

I am authorized to state that the Chief Justice joins in this opinion.