(606 P.2d 120)
No. 51,229

STATE OF KANSAS, *Appellant,* v. TERRY R. BAKER, *Appellee.*

Opinion filed February 8, 1980.

*James W. Clark,* county attorney, and *Robert T. Stephan,* attorney general, for appellant.

*R. Michael Latimer,* of Skoog & Latimer, of Ottawa, for appellee.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This is an interlocutory appeal by the State pursuant to K.S.A. 1979 Supp. 22-3603 from an order sustaining the defendant's motion to suppress two confessions given by the defendant to law enforcement officers.

The defendant, Terry R. Baker, is charged with thirteen counts of burglary. At issue are two separate confessions made by defendant on the night of April 3, 1979, after he and his friend, Tim Parker, voluntarily accompanied Det. James H. Raby, an officer with the Ottawa Department of Public Safety, to the Franklin County Sheriff's Department. The defendant was not arrested at any time material to this decision. Defendant was placed in the sheriff's private office, where he remained alone for approximately ten minutes. Det. Brad L. Gilges, an officer with the Franklin County Sheriff's Department, entered the sheriff's of-

fice. Gilges and the defendant had attended grade school together. Defendant was given the *Miranda* warning. Det. Gilges told defendant that the coat defendant was wearing matched the description of a coat taken in a burglary, including the initials "V.A.N." written in ink on the label. Defendant denied any knowledge of that burglary. Det. Gilges then confronted the defendant with evidence which was found at the scene of a burglary in the form of a piece of paper that had the name "Sherry" and a phone number on it. Defendant was informed that the phone number was that of Sherry Wall, and she had stated that she had given a piece of paper exactly like it to defendant. The defendant replied, "You've got me." The defendant then stated he would tell everything if Gilges would promise to aid him in getting mental help. Considerable controversy exists as to what was said concerning both the request for mental help and the replies to that request.

The defendant then gave a recorded statement to Det. Gilges which was followed by a second recorded statement to Det. Raby. Both statements were subsequently transcribed. The statements go into considerable detail, giving the dates and times of numerous violations of criminal laws by the defendant, including specific details of how entry was made, descriptions of the entrance to buildings and items taken. None of the conversation was taped prior to the defendant's agreeing to give a confession. It is difficult to comprehend why the entire interview was not tape recorded, as the failure to record the entire interview invariably leads to claims that prohibited conduct occurred prior to the use of a recording device.

The trial court suppressed defendant's confessions as hearsay based on K.S.A. 60-460(*f*), which states in pertinent part:

"In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged [is admissible] if, and only if, the judge finds that the accused when making the statement was conscious and was capable of understanding what he or she said and did, and that the accused was not induced to make the statement . . . by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same."

The trial court sustained the motion to suppress the confessions, finding that (1) the State had not sustained its burden of convincing the court that defendant was capable of understand-

ing what he said, regardless of the truth or falsity of his confessions; and (2) the confessions were made as the result of promises by a deputy whom the defendant reasonably believed to have the authority to carry them out, and that defendant's belief in the promises could likely cause him to make false statements in order to obtain the benefits promised.

To be admissible in evidence as an exception to the hearsay rule under K.S.A. 60-460(f), a confession or extrajudicial statement by an accused must have been freely and voluntarily made. The voluntary nature of a statement must be established by a preponderance of the evidence, and by statute (K.S.A. 22-3215[4]) the burden is on the prosecution to prove the statement is voluntary and admissible. *State v. Kanive,* 221 Kan. 34, 35, 558 P.2d 1075 (1976). Furthermore, when there is a conflict in testimony given by the defendant and that produced by the State as to the voluntary character of a confession, it is to be determined like any other question of fact; and although a finding by the trial court is open to review, it has a much better opportunity to ascertain the truth than that afforded to this court and its conclusion, if supported by substantial competent evidence, cannot be disturbed. *Holt v. State,* 202 Kan. 759, 764-65, 451 P.2d 221 (1969).

Is there sufficient competent evidence to support the trial court's finding that defendant, by virtue of his drugged and intoxicated condition, was not capable of understanding what he said and did when he gave the confessions? We think not. We note that at the conclusion of the evidence the trial judge stated:

"Well, gentlemen, let me establish a problem I'm experiencing. Surely, it's not the position of the defendant that he didn't know what he was doing that day because of drugs, is it?

. . . .

"MR. LATIMER: Yes, that is a part of it. It's a part of the sum total.

"THE COURT: He's recalled details that are phenomenal as far as the Court is concerned. The Court now feels that at this stage that this defendant, no matter what he was on, recalls exactly what happened that day and that the only question now before this Court is whether or not the confessions were elicited on a promise, not because that he didn't know what he was doing.

"Is that your position, that he didn't know what he was doing?

"MR. LATIMER: Your Honor, that is a portion of my position. The case law is—I know the Court is well aware of this—and the Court has to look at the totality of the circumstances, and *I'm not saying that he didn't know what he was doing,* but I'm saying the fact that he was taking drugs, these drugs, had influenced him in a manner when you get into the promise situation that it's a part of the totality of the circumstances; and I'm not going to try to—(Emphasis supplied.)

"THE COURT: Well, all right. I'm going to allow you to examine the defendant as to the other drugs on that basis."

No additional evidence was admitted following the above comments and the hearing ended at that point. The trial judge in his order of suppression obviously changed his mind. Although a trial judge has every right to change a tentative conclusion, we are of the opinion he was right the first time. Even viewing the evidence in a light most favorable to the defendant, ignoring the strong evidence of defendant's mental alertness and lack of intoxication and his detailed recall of the crimes in his recorded confessions (as we are required to do under our applicable scope of review), there still exists no substantial competent evidence to support a finding of mental incompetency.

The fact that an accused had been drinking and using drugs does not per se establish involuntariness. *State v. Young,* 220 Kan. 541, 547-48, 552 P.2d 905 (1976); *State v. Harden,* 206 Kan. 365, 370-72, 480 P.2d 53 (1971). The statutory test for admissibility of the confessions is, was the accused "capable of understanding what he or she did" at the time the confessions were made? K.S.A. 60-460(*f*).

When the record is viewed in a light most favorable to the accused, it reveals that the accused's friend, Timothy Parker, testified that in his opinion the accused was intoxicated from alcohol and drugs that day. Although he did observe defendant drinking beer, he did not see him take any drugs and based his opinion about the use of drugs on the way the defendant "acted." As examples, he said that the defendant walked faster than normal, laughed at jokes that were not funny, and called people "butter fingers" if they spilled a glass of beer. His evidence, standing alone, is insufficient to support a finding that the accused was not capable of understanding what he was doing when he gave the confessions.

If sufficient competent evidence exists, it must be found in the testimony of the accused. The accused testified that he had been taking miscellaneous drugs for a long time and that for some nine months preceding the giving of the confessions he had taken speed each day. The day he gave the confessions, he took a form of speed called "preludes" at 7:00 a.m. A little after noon, he joined Parker and drank a few pitchers of beer. After an hour or two he left the tavern and walked around town smoking mari-

juana and "downed three hits of 'microdot', which is an acid," a form of LSD. He gives no further account of his time until he was picked up around 9:30 p.m. by Raby. Later he testified he took three to five microdots. He further testified:

"Q. (BY MR. LATIMER) Were you high or intoxicated by drugs and/or alcohol at that time?

"A. Yes, I was.

"Q. To what degree or to what extent?

"A. Oh, I'd say on an age level from one to ten, I was probably about five years old.

"Q. Now, you'll have to explain that.

"A. About half of what my I.Q. should have been.

"Q. I don't understand your answer. Will you explain the answer to the Court?

"A. Well, I was high enough and drunk enough to where I had about half the I.Q. I should have had.

"Q. And how did you arrive at this determination?

"A. By the testimony I gave the police that night and the laughing I was doing and the constant slang I was using, like 'yeah' and 'uh-huh' and stuff like that that shows up in the testimony.

. . . .

"Q. So, how would you compare your mental state right now, today, at this very minute as compared to when you were talking to Officer Gilges about mental help on April 3rd, 1979 at about 10:00 p.m.?

"A. Well, at this time, I'd say right now sitting here, I have the I.Q. of at least a high school graduate. At that time, I'd say maybe a seventh grader."

The accused did not testify he was not capable of understanding what he was doing when he gave the confessions, and we are unable to reasonably construe from his testimony that he did not fully understand what he was doing. Although it does not enter into our decision, the testimony of the accused at the suppression hearing was clear and concise as to what occurred when the confessions were given and that, coupled with defendant's detailed recall of the crimes as evidenced by his confessions, must have been what the trial judge had in mind when he commented at trial that he felt the only question before the court was whether the confessions were elicited on a promise.

If the trial court's order of suppression is affirmed, it must be on the basis of K.S.A. 60-460(f)(2) that the accused was induced to confess by promises made by the authorities regarding his mental health treatment and that such promises were likely to cause the accused to make false statements.

Before any conversation was had concerning other burglaries, the defendant had voluntarily given to the law enforcement

officers a coat which linked defendant with one burglary, and he had made an incriminating statement ("You've got me") when confronted with evidence concerning a second burglary. It was the defendant who initiated the suggestion of a potential promise. In *State v. Harwick,* 220 Kan. 572, 575, 552 P.2d 987 (1976), the Kansas Supreme Court held that when the promises are solicited by the accused, freely and voluntarily, the accused cannot be heard to say in accepting the promises that he was the victim of compelling influence. Our Supreme Court also rejected an inducement argument in *State v. Creekmore,* 208 Kan. 933, 935, 495 P.2d 96 (1972). There, the defendant was accused of incest and carnal knowledge of a female under the age of eighteen years. One of the detectives suggested that if the charges were true, the accused needed psychiatric help and that he would do what he could to obtain psychiatric help for the accused. The accused testified he confessed in hopes he might be sent to a mental institution for a shorter time than if he was convicted and sent to prison. The Supreme Court there affirmed the trial court's decision that the statement was freely and voluntarily given. In *State v. Smith,* 216 Kan. 265, 530 P.2d 1215 (1975), the Supreme Court rejected an accused's contention that a detective's promise to speak to the judge if defendant cooperated with him was coercive. As we view the accused's confession before us, it was nothing more than the product of the accused's voluntary act for his own benefit, which does not make the confession inadmissible. *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 348, 9 L.Ed.2d 357, 364, 83 S.Ct. 448, *rehearing denied* 372 U.S. 950 (1963). There is no substantial competent evidence in the record, even when viewed in a light most favorable to the accused, to support the trial court's ruling on promissory inducement, and the record does not support a finding that the promises made were likely to cause the accused to make a false confession. The evidence in the record is such that the accused could not reasonably construe it to mean that he was being promised that he would be referred to a mental facility either as an outpatient or by incarceration as opposed to prison. Standing alone, the mere promise to attempt to help the accused by recommending to the county attorney and judge hearing the case that defendant receive mental help of some unspecified nature does not vitiate a confession otherwise freely and voluntarily given.

Reversed.