Rodney Dewayne WILLIAMS *v.* STATE of Arkansas

CR 83-94                                    663 S.W.2d 700

Supreme Court of Arkansas
Opinion delivered December 12, 1983
[Supplemental Opinion on Denial of Rehearing February 13, 1984.*]

*Smith and Purtle, JJ., would grant rehearing. Hollingsworth, J., not participating.

*Larry D. Vaught,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant, Rodney Williams, having several felony convictions, was convicted of the aggravated robbery and first degree murder of Hoyt Green and sentenced on each charge to life imprisonment, the robbery sentence merging with the murder sentence. For reversal, Williams argues that it was error to admit evidence of an unrelated crime and to admit two custodial statements given by him, the first on May 8, 1982 and a later one on May 14. The arguments are without merit and, accordingly, we affirm the trial court.

At about 8 o'clock on the evening of May 7, 1982, Mrs. Patricia Nobles was accosted by a gunman at the rear of her home at 4400 W. 29th Street, Little Rock, as she returned from shopping. She was robbed of her purse, containing credit cards and cash, and she watched the robber get into a light colored Buick. After Williams was arrested she recognized him in a line up and she firmly identified him at trial as the man who robbed her.

About thirty minutes later, Hoyt Green was approached by two men as he worked in his yard at 3705 W. 11th Street in Little Rock. At gunpoint, the men demanded money and when Green resisted, one of them shot and killed him. The two men drove away in a vehicle matching the description of

the one used in the robbery of Mrs. Nobles. Coins were found near the body of Hoyt Green and some were scattered as the man ran to the waiting car.

Williams was arrested around 11 o'clock the following morning. There is no argument that the Miranda warnings were not given; they were fully explained to him. At 9 o'clock that evening Williams gave a statement denying any connection with the Hoyt Green murder, but admitting that he and two companions had robbed Mrs. Nobles.

On May 14 Williams called Officer Ivan Jones to discuss the charges. Jones attempted to reach Williams' lawyer, who was unavailable, and Williams said he wanted to go ahead and asked that a prosecuting attorney be present. Lloyd Haynes, Deputy Prosecuting Attorney, accompanied Jones to the county jail, where Williams offered to give a statement concerning Hoyt Green if he would not be charged with capital felony murder. He then gave a statement that he and two companions had seen Hoyt Green in the yard as they drove around. Williams said he and another passenger got out of the car to rob Green and when Green resisted, the other man shot him. Other shots were fired as they ran to the car. The May 8 and the May 14 statements were admitted in evidence over defense objections.

The May 14 statement is challenged on the grounds: a) that Williams' lawyer was not present and b) the statement was given in reward for a promise to bring a lesser charge. The May 8 statement is attacked because of Williams' age, limited intellect, and apprehension over being interrogated. The argument points out that Williams was arrested at 10:30 a.m. and did not give a statement until 9:05 that evening.

The arguments are not sufficient. As required by our case law [*Degler* v. *State*, 257 Ark. 388, 517 S.W.2d 515 (1974); *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975)], we have reviewed the circumstances developed by the omnibus hearing relative to the two statements and are satisfied the evidence supports the trial court's findings that they were given voluntarily. Williams was twenty-two years old and had obtained the equivalent of a high-school education. He could not have been unfamiliar with police procedures, having previous felony convictions. The Miranda warnings

were repeatedly given to him, which he confirms. He was not subjected to lengthy interrogation, in fact the testimony was that he was not questioned until 9:00 p.m. on the 8th, and promptly gave the statement admitting the robbery of Mrs. Nobles. There is a passing reference to his having wanted his lawyer at the May 8 interrogation (which the appellee does not address) but it is clear this issue, if it has merit, was not first presented to the trial court and, hence, will not support reversal. *Meyers* v. *State,* 271 Ark. 886, 611 S.W.2d 514 (1981); *Williams* v. *State,* 257 Ark. 8, 513 S.W.2d 793 (1974).

With respect to the statement given on May 14, there was proof at the omnibus hearing which supported a finding by the trial court that Williams waived the right to have counsel present by initiating the interrogation and insisting on a meeting even though his lawyer was not then available. Williams did not refute the testimony on this issue and we agree with the findings of the trial judge. Under such circumstances, it was not wrong for Haynes and Jones to meet with Williams in the absence of his lawyer. The proof was undisputed that Williams instigated the meeting, knowing his lawyer was not available. In *Edwards* v. *Arizona,* 451 U.S. 477 (1981), the Supreme Court reviewed the waiver of the warnings established by the case of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), stating:

> . . . [A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina* v. *Butler, supra,* at 372-376, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. *We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or*

*conversations with the police.* (Our italics.)

Nor can the argument that the statement was given in return for a reward or promise be sustained. The applicable law is summarized in *Davis* v. *State,* 275 Ark. 264, 630 S.W.2d 1 (1982):

> The second prong of appellant's suppression argu- main components, first, the statement of the officer on a case-by-case basis by looking at the totality of the circumstances. The applicable law is simple. If a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made. In determining whether there has been a misleading promise of reward we look at the totality of the circumstances. The totality is subdivided into two main compopnents, first, the statement of the officer and second, the vulnerability of the defendant.

Here the promise was neither false nor an inducement of Williams' May 14 confession. He was not enticed by "the flattery of hope", or excited by prospects of reward from those in authority. He conceived the idea and initiated the meeting where he proposed to give a statement in return for an assurance that he would be charged with first degree murder. Nothing suggests the statement was extorted from Williams by false promises. See *Dewein* v. *State,* 114 Ark. 472, 170 S.W. 582 (1914). Williams makes no claim his statement was false, or that he was misled by Haynes and Jones. In fact, the state delivered exactly what he asked for, in contrast to the circumstances in *Tatum* v. *State,* 266 Ark. 506, 585 S.W.2d 957 (1979), where an officer who had promised to do all he could to help the accused, did nothing; or *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909 (1975), where the accused got life after being told that twenty-one years was the most he would receive; or *Hardin* v. *State,* 66 Ark. 53 (1898), where Hardin received the death penalty after being told that second-degree murder would follow.

Finally, appellant cites *Hickey* v. *State,* 263 Ark. 809, 569 S.W.2d 64 (1978) and *Alford* v. *State,* 223 Ark. 330, 266 S.W.2d 804 (1954) for the argument that proof of the

"unrelated" robbery of Mrs. Mattie Nobles should not have been permitted. We cannot say the finding of the trial court on this issue was so clearly wrong as to require its exclusion under Unif. R. Evid. 403. The two men who accosted Mr. Green fled the scene in a light colored Buick which exactly matched the automobile Mrs. Nobles saw Williams get into after she was robbed. Moreover, the two crimes were closely related in time, in location and, especially, in method of operation, i.e., both crimes occurred as Williams and others simply drove around aimlessly in an area generally adjacent to Wright Avenue, until they spotted what they deemed to be likely subjects for robbery. We think there is probative value in the evidence which brings it within the scope of Unif. R. Evid. 404. See *Clines, et al* v. *State,* 280 Ark. 77, 656 S.W.2d 684 (1983).

The judgment on the sentences is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion because I think the statement of May 14, 1982 should have been excluded. It is basic that in order for a confession to be admissible it must be given freely and voluntarily and must not have been extracted by threats or violence nor by direct or implied promises. *Hutto* v. *Rose,* 429 U.S. 28 (1976); *Bram* v. *United States,* 168 U.S. 532 (1897); *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909 (1975). Also, the burden of proving that a custodial statement was voluntary rests upon the state. *Freeman, supra; Scott* v. *State,* 251 Ark. 918, 475 S.W.2d 699 (1972).

The appellant notified the police that he would like to make a statement in the presence of the prosecuting attorney and his own attorney. Not having heard from the officers, the appellant made another call to the same effect the next day. This call resulted in the statement of May 14, 1982. According to the officer and the deputy prosecutor, the appellant's attorney was not available. In return for the statement the charge against the appellant was reduced from capital murder to murder in the first degree. It was admitted by the officer and the deputy prosecutor that the charge was reduced in exchange for the incriminating statement. The reduction in the charge against appellant is absolute proof

that the statement was given in exchange for a promise of reward. The majority rely on *Davis* v. *State,* 275 Ark. 264, 630 S.W.2d 1 (1982). They quote a section of the opinion stating that if a false promise was given the statement would be involuntary. However, another portion of the *Davis* opinion said: "A statement induced by fear or hope of reward is not voluntary." Also included in the *Davis* opinion was a quotation from *Tatum* v. *State,* 266 Ark. 506, 585 S.W.2d 957 (1979), stating that prisoner vulnerability coupled with the statement, "I'll help you any way I can," caused the suppression of a confession. We reversed the conviction on the ground that the statement was given with a promise of reward. When a deputy prosecutor told a prisoner he would help him all that he could, we held the confession to be involuntary. *Shelton* v. *State,* 251 Ark. 890, 475 S.W.2d 538 (1972). The fact that a statement was given as a result of a promise of reward, which promise was kept, does not make it any more voluntary than if a promise of reward had not been kept. In either case, at the time the statement is given the accused is hoping for and expecting a reward. The fact that the reward was given leaves no doubt but that the appellant gave the statement with the expectation that the charge against him would be reduced, and it was.

Supplemental Opinion on Denial of Rehearing
delivered February 13, 1984

STEELE HAYS, Justice. Appellant's petition for rehearing insists that our opinion of December 13, 1983, (*Williams v. State*, 281 Ark. 91, 663 S.W.2d 700 (1983) erred in two respects: in assuming that it was the appellant, and not the state, who proposed a lesser charge in exchange for his confession and in disregarding the law that a confession obtained by a promise of reward may not be used against a defendant. But we adhere to our position on both counts because the record shows unmistakably that it was the appellant who initiated the proposal — Detective Jones testified to that effect and his testimony s,tands unrefuted, and we think the law was correctly applied. However, we believe a supplemental opinion is in order since an important point of law is involved, and was not fully developed in our first opinion.

When the voluntariness of a confession is raised on appeal, we independently review the circumstances in their entirety to determine whether the confession is trustworthy. The burden rests on the state, but unless we can say the trial court clearly erred in determining the preponderance of the evidence, we will affirm. *Davis* v. State, 275 Ark. 264, 630 S.W.2d 1 (1982); *Harris* v. *State*, 244 Ark. 314, 425 S.W.2d 293 (1968).

Here, the single circumstance supporting appellant's position lies in the state's having admittedly agreed to charge appellant with first degree murder in return for his agreement to give a statement about the Hoyt Green murder.[1] However, that fact in itself is not what makes a confession unreliable. An examination of all the attendant circumstances includes those circumstances surrounding

---

[1]Appellant's confession was essentially an admission that he and a companion approached Hoyt Green to rob him, appellant having the pistol; that when Green resisted, the two started running but the companion took the gun from appellant, went back and shot Green.

any agreement such as this one. When all the factors are considered, we conclude that the confession was voluntarily given: 1) appellant had not been subjected to lengthy interrogation, he was questioned briefly on May 8 and not again until he requested the meeting of May 14; 2) appellant was not without counsel, he had a lawyer, evidently retained, though he chose to meet without him; 3) the *Miranda* warnings were repeatedly read to appellant; 4) it was appellant who conceived and proposed that he give a statement in exchange for a charge of first degree murder; 5) at the time the agreement was reached appellant had not been charged in the Green murder, he was at most a suspect; 6) the agreement was not reached with the police, who are sometimes accused of overstepping the strict restraints of the law, but with a seasoned deputy prosecutor of more than twenty years affiliation with the office; 7) appellant did not mistakenly rely to his detriment on a false promise (in contrast to the cases cited in our opinion of December 13, 1983 at p. 95), the state kept the bargain and appellant benefited by it; 8) finally, and notably, appellant does not claim he was lured by the hope of reward into giving a *false* statement, thus, the truth of the statement he gave under oath to the deputy prosecutor remains utterly unchallenged by him.

When the case law applicable to these facts is examined we think it has been correctly applied and the confession was properly admitted. The fact that it was appellant who initiated the proposal is a key factor and one which has been seen by many courts as significantly different from the opposing situation, where the state initiates the proposal and uses it to beguile the suspect. In *Whitworth* v. *State*, 117 S.E. 450 (1923), the Supreme Court of Georgia said that the hope of reward which will exclude a confession must be one which *another holds out to the accused* to elicit it. More recently that same court observed in upholding a confession that the hope of benefit for the confession was not induced by the officers, but proceeded from the accused himself. In *Foster* v. *State*, 72 Ga. App. 237, 33 S.E.2d 598 (1945) it was said, "A hope or fear which originates in the mind of the person making the confession and which originates from needs of his own planting will not exclude a confession." The Kansas Court of Appeals has said that if the defendant

solicits the promise, he cannot claim to have been the victim of compelling influence. *State* v. *Baker,* 4 Kan. App. 2d 340, 606 P.2d 120 (1980). In *State* v. *La Pean,* 247 Wis. 302, 19 N.W.2d 289 (1945), the Wisconsin Supreme Court upheld a confession on circumstances closely resembling those at hand. The accused asked to have the charge reduced from frist degree murder to third degree. The officer said he would take it up with the prosecutor, who then accompanied the officer to the jail, agreed to the proposal, and defendant's written confession was obtained and upheld. Other cases to the same effect are: *State* v. *Jordan,* 114 Ariz. 452, 561 P.2d 1224 (1976); *Eakes* v. *State,* 387 So. 2d 855 (Ala. Crim. App. 1978); *People* v. *Nicholas,* 112 Cal. App. 3d 249, 169 Cal. Rptr. 497 (1980); *People* v. *Coddington,* 123 Ill. App. 2d 351, 259 N.E.2d 382 (1970); *People* v. *Hubbell,* 54 Cal. App. 2d 49, 128 P.2d 579 (1942); *People* v. *Sourisseau,* 62 Cal. App. 2d 917, 145 P.2d 916 (1944); *State* v. *Nunn,* 212 Or. 546, 321 P.2d 356 (1958).

Nor is there any assertion by the appellant that the promise of a lesser charge lured him into a *false* statement. Where the defendant conceives the plan and bargains for its acceptance in return for what he now claims was wrongfully obtained, it is incumbent on him to show he was coaxed into giving a statement that *was not true.* This is the position taken in other jurisdictions. In *State* v. *Nunn, supra,* the test was said to be, was the inducement held out to the accused such that there is any fair risk of a *false* confession, for the object of the rule is *not* to exclude a confession of truth, but to avoid the possibility of a confession of guilt from one who is in fact innocent. The issue is, "Whether the methods used produced an *untrue* acknowledgment of guilt," [*R. W.* v. *State,* 135 Ga. App. 668, 218 S.W.2d 674 (1975)] and, "Were the circumstances such as to result in an untrustworthy confession." [*In Interest of G.G.P.,* 382 So.2d 128 (Fla. Dist. Ct. App. 1980)]. In *State* v. *La Pean, supra,* the court said, "The only question is whether this confession was obtained by promises which induced [the accused] to make an untrue or untrustworthy confession." See also *United States* v. *Gorayska,* 482 F. Supp. 576 (1979) and *Greenwood* v. *State,* 107 Ark. 568 (1913).

Having made an independent review of the entire

circumstances presented to the trial court, we are unable to say that on a preponderance of the evidence, the trial court's findings that the confession was made knowingly and voluntarily is clearly erroneous.

The petition for rehearing is denied.

Justices George Rose Smith and John Purtle would grant petition for rehearing.

Justice P. A. Hollingsworth not participating.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority opinion because I think the statement of May 14, 1982, should have been excluded. It is basic that in order for a confession to be admissible it must be given freely and voluntarily and must not have been induced by threats or violence nor by direct or implied promises. *Hutto* v. *Ross,* 429 U.S. 28 (1976); *Bram* v. *United States,* 168 U.S. 532 (1897); *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909 (1975). Also, the burden of proving that a custodial statement was voluntary rests upon the state. *Freeman* v. *State,* supra; *Scott* v. *State,* 251 Ark., 918, 475 S.W.2d 699 (1972).

The appellant notified the police that he would like to make a statement in the presence of the prosecuting attorney and his own attorney. Not having heard from the officers, the appellant made another call to the same effect the next day. This call resulted in the statement of May 14, 1982. According to the officer and the deputy prosecutor, the appellant's attorney was not available. In return for the statement the charge against the appellant was reduced from capital murder to murder in the first degree. It was admitted by the officer and the deputy prosecutor that the charge was reduced in exchange for the incriminating statement. The majority cites *Davis* v. *State,* 275 Ark. 264, 630 S.W.2d 1 (1982) as precedent in the opinion. The *Davis* opinion stated: "A statement induced by fear or hope of reward is not voluntary." Also included in the *Davis* opinion was a quotation from *Tatum* v. *State,* 266 Ark. 506, 585 S.W.2d 957 (1979), stating that prisoner vulnerability coupled with the statement, "I'll help you any way I can," mandated the suppression of a confession. We reversed the conviction on the ground that the statement was given with a promise of

reward. When a deputy prosecutor told a prisoner he would help him all that he could, we held the confession to be involuntary. *Shelton* v. *State,* 251 Ark. 890, 475 S.W.2d 538 (1972). The fact that a statement was given as a result of a promise of reward, which promise was kept, does not make it any more voluntary than if a promise of reward had not been kept. In either case, at the time the statement is given the accused is hoping for and expecting a reward. The fact that the reward was given leaves no doubt but that the appellant gave the statement with the expectation that the charge against him would be reduced, and it was. After all, the appellant had a constitutional right to remain silent but he traded it for a clear promise of reward. Perhaps without the confession he would not have been found guilty.

The United States Supreme Court stated in *Bram* v. *United States,* supra:

> A confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight,* nor by the exertion of any improper influence . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if *any degree of influence* has been exerted. 168 U.S. at 542-543. (emphasis added.)

This is not a new standard. It has existed since the adoption of the Constitution of the United States. It has been followed in such cases as *Hutto* v. *Ross,* supra; *Brady* v. *United States,* 397 U.S. 742 (1970); and *Payne* v. *Arkansas,* 356 U.S. 560 (1958).

I feel constrained to repeat that the confession of May 14th was given in the absence of appellant's known attorney and in *exchange* for a promise (before the confession was given) to reduce the charge from capital murder to first degree murder. The difference in the possible penalty is the difference between death and life in prison. Read the following question and answer by defense counsel and the officer taking the statement, and then decide whether it was

given as a result of hope of a lighter charge.

> Question: Any threats or promises or coercion used to get him to make the statement?

> Answer: This is the — when he was — Mr. Haynes told him that he would not charge him with capital felony, that he would charge him with first degree only.

One other little thing not noticed by the majority is the undisputed statement in the record that before the statement of May 8th was taken, while he was in custody, appellant requested the presence of his attorney but was refused. Obviously the majority opinion attempts to adopt the view that the totality of the circumstances clearly reveal the appellant was guilty even if the confession was improperly introduced. This argument has been decided adversely in the case of *Payne* v. *Arkansas,* supra. This case was first decided by our own court, *Payne* v. *State,* 226 Ark. 910, 295 S.W.2d 312 (1956), and the confession was allowed. The United States Supreme Court corrected this court then and I suppose it will do it again.

I note with interest the majority opinion avoids citing any United States Supreme Court opinions. Have we seceded again? Even so, we have no right to ignore our own constitution which theoretically guarantees our people the right not to be witnesses against themselves, among other things. This very court has on numerous occasions held that a statement or confession given in fear of punishment or hope of reward is not voluntary and should be excluded. *Davis* v. *State,* supra; *Teas* v. *State,* 266 Ark. 572, 587 S.W.2d 28 (1979); *Tatum* v. *State,* supra; *Freeman* v. *State,* supra; *Northern* v. *State,* 257 Ark. 549, 518 S.W.2d 482 (1975); *Smith* v. *State,* 254 Ark. 538, 494 S.W.2d 489 (1973); *Shelton* v. *State,* supra; *Mitchell* v. *Bishop,* 248 Ark. 427, 452 S.W.2d 340 (1970); *Dewein* v. *State,* 114 Ark. 472, 170 S.W. 582 (1914); and *Greenwood* v. *State,* 107 Ark. 568, 156 S.W. 427 (1913). The foregoing are only a few of our own decisions which are at least partly overruled by the majority opinion.

I would grant the petition for rehearing.