Dennis Edward LOANE *v.* STATE of Arkansas

CR 80-201                                    611 S.W. 2d 190
Supreme Court of Arkansas
Opinion delivered February 2, 1981
[Rehearing denied March 2, 1981.]

E. *Alvin Schay*, State Appellate Public Defender, by: *Jackson Jones*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Following a jury trial, appellant, Dennis Edward Loane, was convicted of aggravated robbery and sentenced to 32 years' imprisonment under the Habitual Criminal Act, Ark. Stat. Ann. § 41-1001 (Repl. 1977).

Appellant first argues that the trial court erred in finding from the testimony at the pre-trial hearing that he had intelligently and knowingly waived his right to counsel at his post-information lineup. The "Motion to Suppress Identification Testimony" and the testimony at the pre-trial hearing in regard thereto pertained only to whether Loane had waived his right to have counsel present.

The question here considered relates to the waiver of the presence of counsel at the lineup. Appellant does not contend that the actual lineup procedures were improper or suggestive. The basic unfairness of the lineup as a denial of due process was not raised in the trial court and is, therefore, not before us.

In January, 1980, counsel was appointed to represent appellant on two separate charges of aggravated robbery then pending in Fort Smith Municipal Court. The robberies occurred at Fort Smith in 1976 at the Kentucky Fried Chicken Restaurant [hereinafter referred to as "Kentucky"] on March 13, and the Sirloin Stockade Restaurant [hereinafter referred to as "Sirloin"] in April.

Appellant, through his attorney, "requested a lineup to

be viewed by the people that claimed that he was the person involved in these charges."

His attorney was presented at the first lineup which was held on February 14, 1980, and which was viewed by two persons from "Sirloin" and three persons from "Kentucky." One witness from "Kentucky," Richard Maestri, identified Loane and that same morning a preliminary hearing was held. Loane was formally charged in circuit court in the "Kentucky" case on February 20, 1980.

At the preliminary hearing, Loane had a conversation with his attorney to the effect that no one had identified him in the "Sirloin" case. After consulting his attorney, Loane agreed to stand in a second lineup, for which he agreed to shave his beard and mustache.

On March 5, 1980, both Loane and his attorney were notified that the second lineup would be held at two o'clock; he consulted with his attorney and agreed to appear in the lineup, although his attorney was not expected to be present. At two o'clock he agreed to appear in the second linup after being informed that four or five witnesses would view the lineup and that his attorney was not present. Five persons viewed the March 5, 1980, lineup: Mr. Conger from "Kentucky" identified him, but none of the four persons from "Sirloin" could identify him.

The "Motion to Suppress Identification Testimony" in this case entitled appellant to a hearing at which the State bore the burden of showing that the waiver of appellant's constitutional right to counsel was given voluntarily, knowingly, and intelligently and was based upon his receiving adequate warning as to his right to counsel. See *Jackson* v. *State*, 249 Ark. 653, 460 S.W. 2d 319 (1970).

Appellant testified and the Sate candidly admitted that Loane was mistaken "as to what he perceived was the purpose of the lineup." And, appellant does not claim that the State, in any way, tricked or intentionally misled him with respect to his appearing in the second lineup.

Appellant correctly contends that he had the right to the presence of counsel at a post-information lineup absent a knowing and intelligent waiver of that right. *United States* v. *Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). And, *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1930), states:

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

Using this definition, we consider the following factors in evaluating the background, experience, and conduct of the accused for purposes of determining whether an intelligent waiver was made:

1. Loane is on record as having continuously requested a lineup on both charges.

2. He knew all witnesses did not view the first lineup.

3. He agreed to shave his beard and mustache for the second lineup.

4. He discussed with his attorney the need for the attorney's presence at the second lineup.

5. He was admittedly informed of his counsel's absence by Detective Hammond prior to the lineup and was asked if he chose to proceed.

The cumulative effect of these factors is that the appellant did, in fact, waive his right to counsel at the second lineup. Therefore, the trial court's finding that appellant had voluntarily, knowingly, and intelligently waived his right to counsel during the lineup confrontation is supported by substantial evidence. *Jackson* v. *State*, 249 Ark. 653, 460 S.W. 2d 319 (1970). We will not set aside the ruling unless it is clearly

erroneous. *Degler v. State*, 257 Ark. 388, 517 S.W. 2d 515 (1974).

In his second point for reversal, appellant argues that the trial court erred in refusing to allow him to introduce evidence that his fingerprints were not found at the place where the alleged robbery occurred unless the prosecution was allowed to introduce its evidence that the fingerprints of one Richard Lee was found.

Appellant first sought to introduce evidence that Loane's fingerprints were not found at the crime scene: "Well, what I intended to offer is hearsay evidence. It is hearsay to the fact that Loane's fingerprints were not found. I agree to that." The prosecution sought to introduce hearsay evidence that the fingerprints of the alleged accomplice, Richard Lee, were, in fact, found at the crime scene. The court ruled it would allow the fingerprint evidence offered by either side or prohibit it altogether. All the fingerprint evidence sought to be introduced was acknowledged to be hearsay by both the prosecutor and defense, the FBI expert not being available to testify. Appellant waived any objection as to hearsay but reserved his objection based on the relevancy of Lee's fingerprints being found on a paper cup at "Kentucky." This contention is without merit, and we uphold the trial court's ruling.

Rule 401, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), states that relevant evidence is that evidence which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Also, "evidence is relevant and admissible if it tends to prove an issue, or constitutes a link in the chain of proof, even if other evidence is required to supplement it." *Martin v. State*, 258 Ark. 529, 531, 527 S.W. 2d 903 (1975).

Appellant testified on direct examination that he became acquainted with Lee when the two of them served time in an Oklahoma penitentiary and that Lee was serving time on a robbery charge. Appellant further testified that following his release from an Oklahoma penitentiary in 1975, the two fre-

quently saw each other through the middle of 1976. On cross-examination appellant described Lee as being shorter than himself and having much darker hair than his; and, he stated that Lee was of a medium build and had what could be a scar on the right side of his face.

This description coincides with the one given by the eyewitnesses. Lee was described as being 5 feet 9 inches tall, weighing 145-150 pounds, having black hair, and having a scar under one eye. Also, he was described as being shorter and stockier than appellant.

Appellant was identified as being at the restaurant and participating in the robbery of "Kentucky" by two witnesses. Lee's fingerprints were found at "Kentucky" immediately after the robbery. These two facts viewed in the light of appellant's testimony that he had never come to Fort Smith with Lee may very well have raised serious doubts as to the credibility of the appellant in the minds of the jury.

The fact of Lee's fingerprints being found at the scene of the robbery is clearly relevant when viewed in the light of the other testimony in the case.

Affirmed.

PURTLE, J., dissents.