Randy Dean LEACH *v.* STATE of Arkansas

CR 92-639

845 S.W.2d 11

Supreme Court of Arkansas
Opinion delivered January 19, 1993
[Rehearing denied March 29, 1993.]

*Callis L. Childs*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This appeal is before us on a petition to review a decision by the Court of Appeals, *Leach v. State*, 38 Ark. App. 117, 831 S.W.2d 615 (1992). Petitioner, Randy Leach, was convicted of conspiracy to commit aggravated robbery of a Wal-Mart courier and received a six-year sentence and a $5,000 fine. The conspiracy charge was interrelated with two other conspiracies, for which Leach and two others were charged. These latter conspiracies were tried separately. The Court of Appeals reversed the judgment of conviction, finding merit in two points of error. Leach petitioned for rehearing on two additional points but the petition was denied. We granted review and the case is now before us on the two points rejected by the Court of Appeals.

In the first of those, Leach argued that the trial court erred in admitting his confession because it was the result of a threat. The substance of the prosecutor's remarks to Leach just prior to his confession is not disputed, that the state had enough evidence to charge him for capital murder but would refrain if Leach could give evidence sufficient to clear himself of the capital murder charge and would tell what he knew concerning the two co-conspirators. Leach was given the *Miranda* warnings and advised that if he admitted to any crime while giving a statement about his co-conspirators, that information could be used against him.

Leach signed the waiver of rights form and gave the police information implicating his co-conspirators in various offenses. He also gave the police information sufficient to clear himself of the murder charge but which implicated him in less serious offenses. Leach was ultimately charged on one of these lesser crimes.

At the suppression hearing the prosecutor offered proof that at the time he spoke to Leach, he did have probable cause to indict him on the murder charge based on statements given by one of the co-conspirators, and this fact is not contested. The trial court held Leach's statement admissible and it was used at trial on the conspiracy charge of this case.

Relying on *Tippit* v. *State*, 285 Ark. 294, 686 S.W.2d 420 (1985), the Court of Appeals held the statement was voluntary. In *Tippit*, the defendant gave a statement in exchange for a promise of leniency, which was kept, and we stated:

> Under the facts and circumstances of this case, when considered in their totality, we think the trial court was correct in admitting the statement. The appellant struck a bargain which was closely related to a plea bargain and both sides kept their promise. Most likely the deal was a wise one for the appellant. In any event we can find no prejudicial error.

Leach argues the trial court was wrong because the facts in this case are distinguishable from *Tippit*. In *Tippit* it was the defendant who had proposed the bargain, whereas here the state initiated the proposal. Leach notes that in *Williams* v. *State*, 281 Ark. 91, 663 S.W.2d 700 (1983), cited in *Tippit*, we emphasized that in determining voluntariness an important factor is whether the defendant or the state initiates the proposal. Further, Leach argues that here police used a threat, whereas in *Tippit* it was a promise that induced the statement.

While in *Williams* we did observe that the defendant's initiation of the proposal was a critical factor, it was to show a that it changed the nature of the proposal as excluding the possibility of outside coercion. That was not to imply that a defendant's initiation was a necessary prerequisite to finding a confession voluntary. In fact, we reiterated that no single factor was

determinative but it was the totality of the circumstances that was significant.

■ As to the contention that the prosecutor's statement constituted a threat rather than a promise, an arguable premise at best, we find no significance in such distinction. Our research has turned up nothing to indicate that a threat is more odious per se than a promise. Rather, the real issue concerning statements made through hope *or* fear is based on broader considerations of voluntariness in light of the particular inducement, whatever its nature. *See* John W. Strong, *McCormick on Evidence* § 147 (4th ed. 1992); 1 W. LaFave *Criminal Procedures* § 6.1, § 6.2 (1984).

■■ Consequently, what we have said in previous cases holds true here. We will examine all of the circumstances to determine whether a statement was voluntary, and if a promise or threat was made, we will look first to the police conduct and then to the vulnerability of the defendant. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982). And if a promise was made that was permissible and was kept, those are circumstances to consider in determining whether the statement was voluntary. *See Tippit, supra;* and *Williams, supra;* and *Tippit* v. *Lockhart*, 859 F.2d 595 (8th Cir. 1988).[1]

From that preface, we turn to the specifics of this case. Randy Leach was a policeman for the Conway police department and had been working in that capacity some nine years. Recently he had been engaged in narcotics and undercover assignments.

■ Leach was not incarcerated prior to his statement being taken, nor formally arrested or charged. In fact he was called at his home to come to the station to discuss "some matters," which he did. When he arrived he spoke with the prosecutor for approximately three minutes, during which the prosecutor made his proposal. The taking of Leach's statement followed, lasting less than forty-five minutes.

---

[1] This was an appeal from a denial of a writ of habeas corpus of *Tippit* v. *State*, 285 Ark. 294, 686 S.W.2d 420 (1985), which appellant has attempted to distinguish. The Eighth Circuit held that a promise to a defendant which was kept by the prosecutor, was just one of the circumstances to consider in the totality of circumstances, and there was no discussion of who had initiated the bargain or whether it was a promise or a threat.

While the state did suggest the proposal, it was made, not by the police but by the official authorized to bring criminal charges. *See Williams, supra.* The state offered proof that there was a basis in fact for the prosecutor to charge Leach with capital murder, and when Leach was forthcoming with information, the prosecution kept its end of the bargain.

■ We see nothing fundamentally wrong in the prosecutor advising Leach what was within his power to do under the circumstances, *see LaFave, supra* at 447. While this may have prompted Leach's confession, it can hardly be argued that this was a fundamentally unfair inducement. *See McCormack, supra* at 568. Nor can we say that Leach's will, given his experiences and background, was in any way overborne.

Nor is it certain Leach's statement was induced by the prosecutor's proposal. Leach testified the prosecutor wanted information on the co-conspirators, and was not pressing for self-incriminating information. Leach could have misled his interrogators about his own involvement and still given incriminating statements about the others. But he decided, evidently, to tell the truth. The bargain was not for a confession in exchange for a lighter sentence, but for information along with the exculpatory information in exchange for going free. If anything, Leach's confession was gratuitous. It must be noted that Leach has not contended at any time that his confession was false.

As his second point, Leach argued to the Court of Appeals it was error for the trial court to deny individual sequestered voir dire. The Court of Appeals responded:

> Before trial, the court denied [Leach's] request for individual sequestered void dire. [Leach] argues that he was thereby inhibited from asking prospective jurors questions about their knowledge of related criminal litigation, and urges us to adopt § 3.4(a) of the Standards Relating to Fair Trial and Free Press promulgated by the American Bar Association Project on Standards of Criminal Justice. That section provides:
>
> (a) Method of examination. Whenever there is believed to be a *significant possibility that individual talesmen will be ineligible* to serve *because of exposure*

*to potentially prejudicial material*, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors. An accurate record of this examination shall be kept, by court reporter or tape recording whenever possible. The questioning shall be conducted for the purpose of determining what the prospective juror has read and heard about the case and how his exposure has affected his attitude towards the trial, not to convince him that he would be derelict in his duty if he could not have cast aside any preconception he might have. [Our emphasis.]

[Leach] concedes that the decision to grant or deny sequestered individual voir dire is left to the discretion of the trial court. *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985). He also concedes that reversal will not lie absent a showing of prejudice. *See e.g. Logan* v. *State*, 300 Ark. 35, 776 S.W.2d 341 (1989). Because here, as in *Logan*, the record does not reflect the requisite prejudice, [Leach] urges us to adopt the ABA standard and overrule the supreme court's decisions in *Logan; Hefferman* v. *State*, 278 Ark. 325, 645 S.W.2d 666 (1983); and other supreme court cases stating the same principle. Despite [Leach's] contention to the contrary, we lack the authority to overrule decisions of the Arkansas Supreme Court. *Huckabee* v. *State*, 30 Ark. App. 82, 785 S.W.2d 223 (1990). It will be for the circuit court to decide whether, on retrial, sequestered voir dire is necessary.

First, we find it unnecessary to overrule any previous decisions in order to approve of the ABA Standard § 3.4(a). None of the cases Leach cites, *Logan* v. *State, supra; Hefferman* v. State, supra; and *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983), are incompatible with that standard. None of those cases require that actual prejudice be demonstrated to show an abuse of discretion. At most, we stated that no actual prejudice was in fact demonstrated, but we did not state that it was required. In none of those cases was the question posed whether individual sequestered voir dire be granted on the basis of potential prejudice only.

Leach asks us to adopt the ABA Standard, but we

believe that is unnecessary. The Standard merely recognizes that at some point pretrial publicity can be sufficiently pervasive that individual sequestered voir dire would be mandated because of the likelihood that individual venirepersons have been exposed to prejudicial information. Nothing we have said in past cases would preclude any trial court from taking such an approach, if it hasn't already done so.[2]

■ In the case before us it is not necessary to review the trial court's action, as we find no evidence that Leach was prejudiced. He argues he was limited in his questioning for fear of eliciting prejudicial information and was therefore not able to question prospective jurors individually or as a group to determine "what they knew about the charge against him." Without that information Leach contends he was reduced to "shooting in the dark" in exercising his peremptory challenges.

We find no basis for this claim. The record reveals that counsel did in fact ask the jury a number of times what they knew about the case. He asked the question en masse and then called on individuals who had their hands raised and received more detailed information as to what these individuals knew or had heard about the defendant. We find nothing prejudicial in these answers and Leach advances nothing additional in that regard.

On remand, should the question arise again the trial court is free to decide, in its discretion, whether there is sufficient showing of potential prejudice to warrant individual sequestered voir dire.

We affirm the decision of the Court of Appeals.

---

[2] *See, e.g., United States v. Liddy*, 509 F.2d 428 (D.C. Cir. 1974); *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976).