#23783-rev & rem-RWS

**2006 SD 82**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

LENNY RAE HOLMAN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE PETER H. LIEBERMAN
Judge

* * * *

LAWRENCE E. LONG
Attorney General

GARY CAMPBELL
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.

STEVEN R. BINGER
Binger Law Office
Sioux Falls, South Dakota                    Attorney for defendant
    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 24, 2006

OPINION FILED **08/23/06**

#23783

SABERS, Justice

[¶1.]     Lenny Holman (Holman) appeals his convictions for first degree robbery and first degree burglary.  Because the circuit court erred in failing to suppress Holman's confessions, we reverse and remand for a new trial.

**FACTS**

[¶2.]     On September 21, 2003, a man entered the Gold Nugget Casino in Sioux Falls, South Dakota, and used a sawed off shotgun to force the clerk to turn over approximately $7,800 dollars.  Neither the clerk nor her boyfriend, who was playing video lottery, was able to identify the perpetrator because he was wearing a ski mask at the time of the robbery.  The robbery remained unsolved for almost six months.

[¶3.]     In early March, 2004, Detective Robert Harrison (Harrison) of the Sioux Falls Police Department received a tip that Holman may have been involved in the robbery.  Harrison met Holman on a prior occasion when Harrison was investigating a stolen trailer.  Harrison described Holman's reluctance to cooperate with the police during the prior interview as "he [Holman] would [not] even give us the time of day."

[¶4.]     Harrison learned that Holman was incarcerated at the Pierce County, Nebraska jail, on charges of possession of methamphetamine.  Harrison spoke with Pierce County Deputy Sheriff Joshua Bauermeister (Bauermeister) and arranged for an interrogation session with Holman.  On March 10, Harrison and two other

Sioux Falls detectives[1] traveled to Nebraska to interrogate Holman. Harrrison did not believe Holman would be cooperative based on the prior interview in regards to the stolen trailer. At the time of the interview, Holman had been incarcerated for approximately ten days.

[¶5.] Holman had court-appointed counsel on the Nebraska charges. However, neither Harrison nor any of the other officers inquired into any allegations of criminal conduct that occurred outside of South Dakota. Holman did not request the assistance of counsel in regards to the South Dakota charges.

[¶6.] The interrogation took place in the Pierce County Sheriff's office. Harrison, Holman, Bauermeister, and two other Sioux Falls detectives were present. Harrison began the interview by explaining to Holman that he was investigating numerous charges including two armed robberies, a stolen trailer, stolen tools, alteration of the trailer serial number, and alteration or falsifying the title of the trailer.

[¶7.] The initial part of the conversation between Harrison and Holman was not recorded. Detective Harrison told Holman that it might be to his benefit to divulge various crimes he was suspected of committing. In response, Holman asked Detective Harrison "what kind of 'deal' [he] could get if he cooperated." Holman testified at the motion hearing that Harrison promised "he would see to it that [Holman] was only charged with one felony" in return for Holman's cooperation. Holman testified that Harrison left the room to make a call to Sioux Falls regarding the matter.

---

1. Neither of these two detectives testified at the motion hearing.

[¶8.] Bauermeister testified via deposition. He testified that it was his recollection that Harrison offered to charge Holman with only one felony in return for his cooperation. Specifically, Bauermeister testified as follows:

> Q: Now when the sergeant [Harrison] said something about making a phone call so that he could possibly make a deal with Mr. Holman, was this - - can you elaborate on that for me some more?
>
> A: I don't remember too many specifics. I just - - I do recall the sergeant leaving the room. I recall him coming back and saying that he had spoken with somebody. I don't remember who the sergeant said he spoke with. But the sergeant did indicate that they would only - - I believe the agreement was that they would only charge Mr. Holman with a certain number of crimes in return for his cooperation.
>
> Q: Do you remember what the number of crimes was that they would only charge him with?
>
> A: I believe it was one felony, just a single felony.

[¶9.] Harrison testified at the motion hearing that he never left the interrogation room to make a phone call. However, he testified to the agreement to charge Holman with only one felony as follows:

> Q: And did you have authority to represent that he would in fact only be charged with one of the robberies?
>
> A: Well, it was my investigation at the time - - all these cases - - and I essentially told him that I believed there was not a problem with that, which I guess I don't normally tell people that. This was somewhat of a different circumstance…

After the state's attorney pressed Harrison, he testified that the deal was not an overt promise to charge Holman with one felony, but rather a promise to *recommend* that Holman be charged with only one felony.

[¶10.]     The balance of the interrogation session was audio recorded by Bauermeister.  Holman confessed to involvement in multiple crimes, including the robbery of the Gold Nugget Casino.  At the beginning of the interrogation session, Holman and Harrison engaged in the following exchange:

Holman:  You're going to do this the way you said, right?

Harrison:  Yes.  I told you hey, only one charge - -

Towards the end of the interrogation session, Holman inquired whether Harrison was going to "do what [Harrison] said he was going to do?"  Harrison replied "yep."

[¶11.]     Holman was charged with one count of robbery in the first degree under SDCL 22-30-1 and 22-30-6, and one count of burglary in the first degree under SDCL 22-32-1(3), both of which are felonies punishable by imprisonment in the state penitentiary.  A Part II habitual offender indictment was also filed but was dismissed before trial.  Holman entered a plea of not guilty to the two felony charges and made a motion to suppress the confession obtained by Harrison.  The circuit court denied Holman's motion.  In its findings of fact, the circuit court found that Harrison had told Holman that there would be no "promised deals" but only a "recommendation" that Holman be charged with one felony.  The circuit court did not address the deposition testimony of Bauermeister.

[¶12.]     Holman was tried on the robbery and burglary charges.  At trial, Holman's confession was introduced by the State.  Holman was convicted on both charges.  Holman raises one issue on appeal.

> Whether the circuit court erred in denying Holman's motion
> to suppress his confession because it was not shown to be
> voluntary.

## Standard of Review

[¶13.] "Although there are often subsidiary factual questions deserving deference, the voluntariness of a confession is ultimately a legal question." State v. Tuttle, 2002 SD 94, ¶20, 650 NW2d 20, 30 (citing Miller v. Fenton, 474 US 104, 116, 106 SCt 445, 452-53, 88 LEd2d 405, 414-15 (1985) (additional citations omitted)). This Court reviews the entire record and makes an independent determination of voluntariness. Id. (citing Beckwith v. United States, 425 US 341, 348, 96 SCt 1612, 1617, 48 LEd2d 1, 8 (1976) (additional citations omitted)). The State must establish the voluntariness of a confession by a preponderance of the evidence. Id. ¶21 (citing Nix v. Williams, 467 US 431, 444, 104 SCt 2501, 81 LEd2d 377, n5 (1984)).

*Whether the confession was shown to be voluntary*

[¶14.] The Due Process Clause of the Fourteenth Amendment prohibits the admission into evidence, over objection, of a confession obtained through coercion. Payne v. State of Arkansas, 356 US 560, 568, 78 SCt 844, 850, 2 LEd2d 975 (1958). Over a century ago, the United States Supreme Court pronounced that a confession cannot be obtained by "any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 US 532, 542-43, 18 SCt 183, 187, 42 LEd 568 (1897). However, the Court later rejected a bright line rule in favor of a totality of the circumstances test. *See* Colorado v. Connelly, 479 US 157, 167, 107 SCt 515, 522, 93 LEd2d 473, 484 (1986).

[¶15.] We have adopted the United States Supreme Court's totality of the circumstances test in determining whether a confession was involuntary. *Tuttle*, 2002 SD 94, ¶22, 650 NW2d at 31. "The factual inquiry centers on (1) the conduct

of law enforcement officials in creating pressure and (2) the suspect's capacity to resist that pressure." *Id.* (citing Mincey v. Arizona, 437 US 385, 399-401, 98 SCt 2408, 2417-18, 57 LEd2d 290, 304-06 (1978)). As to the second factor:

> we examine such concerns as the defendant's age; level of education and intelligence; the presence or absence of any advice to the defendant on constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; the use of psychological pressure or physical punishment, such as deprivation of food or sleep; and the defendant's prior experience with law enforcement officers and the courts. Finally, deception or misrepresentation by the officer receiving the statement may also be factors for the trial court to consider; however, the police may use some psychological tactics in interrogating a suspect.

*Id.* (internal citations and quotations omitted). Additionally, the coercion or improper conduct of law enforcement must be a direct cause of the confession. *Id.* ¶23, 650 NW2d at 31.

[¶16.]      In *Tuttle*, we held that a confession was involuntary where a police officer told the suspect that "his report could be written to make things look good" or he could "write it up that [the suspect was] not cooperating, and [was] being a real jerk about it." *Id.* ¶25, 650 NW2d at 32. We concluded the suspect's confession was not "the product of a rational intellect and a free will." *Id.* (quoting Blackburn v. Alabama, 361 US 199, 208, 80 SCt 274, 280, 4 LEd2d 242, 249 (1960)). *Tuttle* concerned threats of adverse consequences if the suspect was not willing to cooperate. We did not have occasion to examine whether implied or express promises of leniency could render a confession involuntary. However, we did cite case law suggesting that promises to tell a prosecutor of cooperation may be permissible. *Id.* ¶26 (citing State v. Tapia, 767 P2d 5, 11 (Ariz 1988)).

[¶17.] Other courts have addressed the issue of whether promises of leniency can render a confession involuntary. In *State v. Rezk*, the New Hampshire Supreme Court held that there was little distinction between threats of harsher punishment and promises of leniency. 840 A2d 758, 764 (NH 2004). The court noted "a specific promise of leniency should the defendant confess is akin to a threat of harsher punishment should the defendant remain silent." *Id*. (citing Leach v. State, 845 SW2d 11, 13 (Ark 1993)). However, the court did acknowledge that general encouragement to cooperate or specific promises to merely recommend leniency are permissible. *Id*. (citing United States v. Harrison, 34 F3d 886, 891 (9thCir 1994)).

[¶18.] In *Harrison*, the Ninth Circuit indicated that there was no meaningful distinction between threats of harsher punishment and specific promises of leniency that would render the former constitutionally impermissible, and the latter constitutionally firm. 34 F3d at 891. The court noted, "both types of statements are simply different sides of the same coin: 'waive your rights and receive more favorable treatment' versus 'exercise your rights and receive less favorable treatment.'" *Id*. Two of our neighboring state supreme courts have followed this rationale. *See* State v. Mullin, 85 NW2d 598, 603 (Iowa 1957) (confession involuntary where police officer stated that more mercy would be granted if the suspect told the truth); State v. Biron, 123 NW2d 392, 396 (Minn 1963) (confession involuntary where police told suspect that if he did not cooperate they could not "go up there and get any break for [him]").

[¶19.] In this case, the circuit court found that Harrison told Holman there would be no specific deal, but rather a recommendation of leniency. After reviewing

the record, we conclude the circuit court's finding is not supported by the evidence. The transcript is devoid of any instance where Harrison informed Holman that he was merely going to make a recommendation of leniency. Instead, Harrison responded to Holman's request for an assurance by stating "I told you hey, only one charge." Holman and Bauermeister both testified that the "deal" was supposed to be that Holman be charged with one felony. Holman, as a criminal defendant, may have had an incentive to lie. Bauermeister, a deputy sheriff, did not.

[¶20.]     Harrison's testimony was that he thought he had authority to enter into the agreement and that he did not believe "there would be a problem." It was only after further inquiries from the state's attorney that Harrison began referring to the deal as merely a recommendation. There is also the matter of Harrison leaving the room to make a phone call, presumably to the state's attorney office. Harrison denies this allegation. However, Holman and Bauermeister both testified that they recalled the incident. The circuit court did not address this incident in its findings of fact.

[¶21.]     Normally, we give deference to the circuit court on factual issues. However, as mentioned, the United States Supreme Court has mandated that appellate courts make an independent determination of voluntariness. The record does not support the circuit court's finding that Harrison told Holman that he would merely make a recommendation. Instead, the record reflects that Harrison acted as though he could enter into a jailhouse plea bargain with Holman and confirmed the deal with the state's attorney.

#23783

[¶22.]     In terms of Holman's ability to resist Harrison's promise of leniency and confirmation, we note the following factors in favor of voluntariness: Holman was thirty years old at the time of the interrogation; he had experience in dealing with law enforcement; the interrogation only lasted forty-five minutes; he was not deprived of food or water and there was no physical abuse; and Holman brought up the subject of leniency in exchange for his cooperation.

[¶23.]     The facts that support the confession as involuntary include: the promise of leniency and phone call; Holman was incarcerated at the time of the interrogation; Holman did not have the assistance of counsel during the interrogation; and Holman did "not give Harrison the time of day" during a prior interview in which Holman was not promised leniency; and Detective Harrison's promise of leniency proved false.

[¶24.]     In *State v. Stanga*, this Court considered false police promises made to induce a *Miranda* waiver and subsequent statement.[2]  2000 SD 129, 617 NW2d 486.  In concluding that such promises required suppression of the statement, this Court observed:

> [W]hen the police interview a suspect, they must skate a fine line.  They are employed to protect the public, to solve crimes, to discover missing persons, and to determine whether missing persons have been the victims of foul play.  They are authorized to interview suspects who have been advised of their rights, but they must conduct the interview without the undue pressure that amounts to coercion and without the dishonesty and trickery that amounts to false promise.

---

2.    "The voluntariness of an admission and the validity of a *Miranda* waiver-of-rights are separate but parallel inquiries."  *Stanga*, 2000 SD 129, ¶8, 617 NW2d at 488 (citing 2 S. Childress & M. Davis, Federal Standards of Review § 11.13, at 11-54, 55 (3d Ed 1999).

*Id.* ¶16 (citation omitted).  Under the totality of circumstances, we conclude the specific promise of leniency and deception that followed directly resulted in Holman's involuntary confession.  It is undisputed that Holman had not cooperated with law enforcement in the past.  Harrison did not expect to receive any information prior to promising leniency.  Bauermeister testified that he did not believe Holman was going to speak to Harrison, but all of that changed when Harrison offered to charge Holman with only one felony.  Under these circumstances, Holman's confession was not the product of rational intellect and free will.  The State failed to meet its burden of proving Holman's confession was voluntary.  Therefore, the circuit court erred in denying Holman's motion to suppress the confession.

*Harmless v. prejudicial error*

[¶25.]       Although admission of an involuntary confession violates the Fourteenth Amendment, it does not constitute reversible error if the State can prove the error was harmless beyond a reasonable doubt.  Arizona v. Fulminante, 499 US 279, 296, 111 SCt 1246, 1257, 113 LEd2d 302 (1991).  The United States Supreme Court uses caution in conducting this analysis, noting:

> A confession is like no other evidence.  Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . .  [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.  Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so."

*Id.* (quoting Bruton v. United States, 391 US 123, 139-140, 88 SCt 1620, 1630, 20 LEd2d 476 (1968)).

[¶26.]     There was no physical evidence linking Holman to the robbery. Neither the clerk nor her boyfriend could identify Holman. The only significant evidence of guilt besides the confession was the testimony of a claimed accomplice. However, the jury was instructed that it could not base a conviction on the accomplice testimony unless it was corroborated by other evidence. The instructions provided that the confession could be used as evidence corroborating the accomplice's testimony. Under these circumstances, the State has not met its burden of proving the involuntary confession was harmless beyond a reasonable doubt.

[¶27.]     Reversed and remanded for trial.

[¶28.]     KONENKAMP and MEIERHENRY, Justices, concur.

[¶29.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur in result.


ZINTER, Justice (concurring in result).

[¶30.]     The Court correctly concludes that Holman's statement must be suppressed. However, I concur in result because the Court adopts sweeping statements of foreign law that are inconsistent with our jurisprudence and are unnecessary to decide this case. Ultimately, we need go no further than to hold that suppression is required because Holman's statement was induced by the significant, false police representation that if he gave a statement he would only be charged with one felony.

[¶31.] I cannot join this Court's view of the law, which it derives from the Ninth Circuit Court of Appeals in *United States v. Harrison*, 34 F3d 886 (9thCir 1994) and related state cases. *See supra* ¶¶17-18. Relying primarily on *Harrison*, this Court adopts the view that there is no "meaningful distinction between threats of harsher punishment and specific promises of leniency that would render the former constitutionally impermissible and the latter constitutionally firm." *Id.* ¶18. The court gleans this view from *Harrison's* language that: "both types of statements are simply different sides of the same coin: waive your rights and receive more favorable treatment versus exercise your rights and receive less favorable treatment." *Id.* (citing *Harrison*, 34 F3d at 891).

[¶32.] However, this Court fails to mention that the Ninth Circuit immediately qualified the foregoing quotation by recognizing two circumstances distinguishing threats from promises of leniency. The Ninth Circuit first noted that a defendant may benefit from learning about the possibility of a reduced sentence. *Harrison*, 34 F3d at 891. The Ninth Circuit also noted that promises to recommend leniency are generally not sufficiently compelling to overbear a defendant's will. *Id.* (citing *United States v. Leon Guerrero,* 847 F2d 1363, 1366 (9thCir1988)).

[¶33.] Therefore, there are meaningful distinctions between promises of leniency and threats of harsher punishment. As this Court recently recognized:

> Police may legitimately tell a suspect that cooperation will be passed on to the authorities and may increase the likelihood of leniency, but threatening to inform the prosecutor or the judge of a suspect's refusal to cooperate violates the Fifth Amendment right to remain silent.

State v. Tuttle, 2002 SD 94, ¶32, 650 NW2d 20, 36.

[¶34.] I also decline to join the Court's analysis because it fails to give sufficient weight to the fact that Holman initiated the request for leniency, asking "what kind of deal could [he] get if he cooperated" by giving his statement. This factor is highly significant because courts recognize that statements are voluntary when it is the defendant that requests leniency in return for giving a statement. *See* State v. Richardson, 316 NC 594, 604, 342 SE2d 823, 831 (1986) (noting that "[p]romises or other statements indicating to an accused that he will receive some benefit if he confesses do not render his confession involuntary when made in response to a solicitation by the accused"); Drew v. State, 503 NE2d 613, 617 (Ind 1987) (noting "the defendant had already manifested the propensity and willingness to make a voluntary statement before the occurrence of any action on the part of the State" because the promise of immunity was in "response to a specific request by the defendant, who solicited the promises as a precondition for making a full statement"); State v. Hutson, 537 SW2d 809, 813-14 (MoCtApp 1976) (concluding that the confession was voluntary under the totality of the circumstances, including the fact that the defendant initiated the plea negotiations).

[¶35.] Finally, the Court's adoption of conflicting foreign law is unnecessary because, under South Dakota law, the false police promise alone requires suppression. I agree with the Court that the significant, false promise of only being charged with one felony was made to get Holman to make his statement. Furthermore, that false promise was not harmless error. Therefore, as the Court

acknowledges, under *State v. Stanga*, 2000 SD 129, 617 NW2d 486, Holman's statement should be suppressed.[3]

[¶36.]     GILBERTSON, Chief Justice, joins this special writing.

---

3.     *See also* United States v. Pinto, 671 FSupp 41, 60 (DMe 1987) (holding that "[c]ivilized standards of evidence do not permit the use of statements made in response to a promise which was false when made and which was tacitly altered or rescinded after defendant had met what he reasonably understood to be the terms of the original promise"); United States v. Goldstein, 611 FSupp 626, 632 (NDIll 1985) (stating that a confession is involuntary and unconstitutional when government deliberately misrepresents the consequences of a confession); Tippitt v. State, 285 Ark 294, 295, 686 SW2d 420, 421 (1985) (holding that "[a] false promise which misleads an accused renders his statement involuntary") (citing Davis v. State, 275 Ark 264, 267, 630 SW2d 1, 2 (1982) (stating "[i]f a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made") (*overruled on other grounds by* Grillot v. State, 353 Ark 294, 107 SW3d 136 (2003)); State v. McDermott, 131 NH 495, 501, 554 A2d 1302, 1306 (1989) (noting that allowing the government to revoke its promise after obtaining incriminating information "obtained in reliance on that promise would be to sanction governmental deception in a manner violating due process").